**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

MICHAEL EDWARD KOWAL,

        Defendant.

No. 06-CR-133-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **RELEVANT PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . **2**

III.   **FINDINGS OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

    A.    *The "Michael Edward Kowal" Name* . . . . . . . . . . . . . . . . . . . . . . . **4**
        1.    *Defendant's birth name* . . . . . . . . . . . . . . . . . . . . . . . . . **4**
        2.    *Arizona charges* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
    B.    *The "Larry William Tipton" Name* . . . . . . . . . . . . . . . . . . . . . . **5**
        1.    *Stealing the identity* . . . . . . . . . . . . . . . . . . . . . . . . . **5**
        2.    *The Arizona driver's license* . . . . . . . . . . . . . . . . . . . . . **5**
        3.    *The SSN ending in the four digits 0053* . . . . . . . . . . . . . . . **5**
        4.    *The passport* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
        5.    *Federal charge in Arizona* . . . . . . . . . . . . . . . . . . . . . . **6**
    C.    *The "William Clorindo Bloom" Name* . . . . . . . . . . . . . . . . . . . . **6**
        1.    *Stealing the identity* . . . . . . . . . . . . . . . . . . . . . . . . . **6**
        2.    *California charge* . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
    D.    *The "Michael William Tipton" Name* . . . . . . . . . . . . . . . . . . . . **7**
        1.    *The marriage license* . . . . . . . . . . . . . . . . . . . . . . . . **7**
        2.    *The SSN ending in the four digits 0053* . . . . . . . . . . . . . . . **8**
        3.    *The Iowa driver's license* . . . . . . . . . . . . . . . . . . . . . . **8**
        4.    *The real estate license* . . . . . . . . . . . . . . . . . . . . . . . **9**
        5.    *The certificate of title to a vehicle* . . . . . . . . . . . . . . . . . **9**
    E.    *The Annulment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
    F.    *Return to the "Michael Edward Kowal" Name* . . . . . . . . . . . . . **10**

IV.   **MOTION TO DISMISS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

A.      The Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
B.      Whether the Term "Person" is Limited to Living Persons . . . . . . . 11
        1.      Plain language of the statute . . . . . . . . . . . . . . . . . . . . . 11
        2.      Legislative history . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        3.      Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
C.      Whether Count 5 of the Indictment States an Offense . . . . . . . . . 17

V.      BENCH TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

A.      The Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        1.      Government's arguments . . . . . . . . . . . . . . . . . . . . . . . . 18
        2.      Defendant's arguments . . . . . . . . . . . . . . . . . . . . . . . . . 19
B.      Elements of the Crime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
C.      "Means of Identification" . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        1.      Count 5: "Tipton" and "December" . . . . . . . . . . . . . . . 21
        2.      Count 7: "1944-12-XX" . . . . . . . . . . . . . . . . . . . . . . . 24
D.      "Lawful Authority" to Use the Means of Identification . . . . . . . . . 25
E.      Verdicts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VI.     MOTION FOR JUDGMENT OF ACQUITTAL . . . . . . . . . . . . . . . . . . . 26

VII.    DISPOSITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## I.  INTRODUCTION

The matters before the court are Defendant's Motion to Dismiss Counts 5 and 7 ("Motion to Dismiss") (docket no. 13), the bench trial of Counts 5 and 7 of the Indictment (*see* docket nos. 34, 35, 36, 38 and 39) and Defendant's Motion for Judgment of Acquittal Re:  Counts 5 and 7 ("Acquittal Motion") (docket no. 37).

## II.  RELEVANT PROCEDURAL BACKGROUND

On October 19, 2006, Defendant was charged in a seven-count Indictment.  Counts 1, 3, 4 and 6 charge Defendant with using a fraudulently obtained Social Security Number ("SSN"), in violation of 42 U.S.C. § 408(a)(7)(A).   Count 2 charges Defendant with making a false statement to the Social Security Commissioner, in violation of 42 U.S.C. § 408(a)(6).  Counts 5 and 7 charge Defendant with aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).  Specifically, Count 5 of the Indictment charges:

2

On or about September 10, 2004, in the Northern District of Iowa, [D]efendant, MICHAEL EDWARD KOWAL, a/k/a "Michael William Tipton," a/k/a "Larry William Tipton," during and in relation to the offense set out in COUNT 4 [of the Indictment],[1] did knowingly use without lawful authority a means of identification of another person. Specifically, [D]efendant used the last name ("Tipton") and month of birth ("December") of "Larry William Tipton," an actual person.

This was in violation of 18, United States Code, Section 1028A(a)(1).

(docket no. 1) (emphasis in original). Count 7 of the Indictment charges:

On or about January 13, 2005, in the Northern District of Iowa, [D]efendant MICHAEL EDWARD KOWAL, a/k/a "Michael William Tipton," a/k/a "Larry William Tipton," during and in relation to the offense set out in COUNT 6 [of the Indictment],[2] did knowingly use without lawful authority a means of identification of another person. Specifically, [D]efendant used the name ("Larry William Tipton") and date of birth ("194X-12-XX") of "Larry William Tipton," an actual person.

This was in violation of Title 18, United States Code, Section 1028A(a)(1).

(docket no. 1) (emphasis in original).

On November 28, 2006, Defendant filed the Motion to Dismiss. On December 14, 2006, the government filed a response. On December 21, 2006, Defendant filed a reply.

---

[1] Count 4 of the Indictment charges Defendant with using a fraudulently obtained SSN, that is, the SSN ending in the four digits 0053, for the purpose of obtaining an Iowa real estate license, in violation of 42 U.S.C. § 408(a)(7)(A).

[2] Count 6 of the Indictment charges Defendant with using a fraudulently obtained SSN, that is, the SSN ending in the four digits 0053, for the purpose of obtaining a certificate of title to a vehicle, in violation of 42 U.S.C. § 408(a)(7)(A).

3

On December 18, 2006, Defendant filed Defendant's Motion to Continue Trial of Counts 5 and 7 (Consented) ("Motion to Continue"). In the Motion to Continue, Defendant informed the court that he would be entering guilty pleas to Counts 1, 2, 3, 4 and 6 of the Indictment. On December 22, 2006, Defendant appeared before a United States magistrate judge for a change of plea hearing. At such hearing, Defendant entered guilty pleas to Counts 1, 2, 3, 4 and 6 of the Indictment. On the same date, the United States magistrate judge entered a report and recommendation that a United States District Court judge accept Defendant's pleas of guilty. On January 10, 2007, the court entered an order adopting the report and recommendation pertaining to Defendant's guilty pleas.

On December 27, 2006, Defendant, relying on Federal Rule of Criminal Procedure 23(a), waived his right to a jury trial on Counts 5 and 7 of the Indictment. On January 16, 2007, the parties filed a Stipulation of Facts for Trial Re: Counts 5 and 7 ("Stipulation"). On the same day, the government and Defendant filed trial briefs, and Defendant filed the Acquittal Motion. On January 23, 2007, the government and Defendant filed replies.

Finding these matters fully submitted and ready for decision, the court turns to consider them.

## III. FINDINGS OF FACTS

The court makes the following factual findings beyond a reasonable doubt:

### A. The "Michael Edward Kowal" Name

### 1. Defendant's birth name

Defendant was born on a date in September of 1944[3] and given the name Michael Edward Kowal.

---

[3] Rather than seal this order, the court has chosen to exclude exact birth dates and SSNs herein. *See* LCrR 1.1.b (providing that the local civil rules apply to criminal cases); LR 10.1.h (requiring parties to redact personal data identifiers, including SSNs and dates of birth, unless a document is filed under seal).

### 2. Arizona charges

In 1988, Defendant was charged in Arizona state court under the name Michael Kowal on charges of theft and forgery. On February 21, 1989, Defendant appeared on the charges, which alleged the embezzlement of funds from his employer.[4]

### B. The "Larry William Tipton" Name

### 1. Stealing the identity

After his court appearance on February 21, 1989, Defendant conducted some research and obtained a State of Arizona Certified Copy of Vital Record ("Tipton Birth Certificate"). The Tipton Birth Certificate was a birth record of a person named Larry William Tipton in Wickenburg, Arizona, on a date in December of 1944. Larry William Tipton was born to William Daniel Tipton and Dorothy Catherine LaMar Tipton. Larry William Tipton died in Kansas when he was five years old.

### 2. The Arizona driver's license

On September 25, 1989, Defendant used the Tipton Birth Certificate to obtain an Arizona driver's licence in the name of Larry William Tipton ("Arizona License"). The Arizona License is signed "Larry W. Tipton."

### 3. The SSN ending in the four digits 0053

On October 2, 1989, using the Tipton Birth Certificate and the Arizona License, Defendant applied for a SSN in the name of Larry William Tipton. Defendant completed a "Social Security Administration Application for a Social Security Card" form and signed his name as "Larry W. Tipton" under the statement which reads: "DELIBERATELY FURNISHING (OR CAUSING TO BE FURNISHED) FALSE INFORMATION ON THIS APPLICATION IS A CRIME PUNISHABLE BY FINE OR IMPRISONMENT, OR BOTH." Defendant listed his "place of birth" as Wickenburg, Arizona, and listed his

---

[4] On February 9, 1999, the authorities dismissed the Arizona theft and forgery charges.

5

parents as those individuals who were identified on the Tipton Birth Certificate. Defendant received a SSN ending in the four digits 0053.

### 4. *The passport*

On October 12, 1989, Defendant applied for a United States passport by using the Tipton Birth Certificate, the Arizona License and the SSN ending in the four digits 0053. He again listed his parents as being those individuals who were identified on the Tipton Birth Certificate. The application was denied.

### 5. *Federal charge in Arizona*

On November 21, 1989, in the United States District Court in and for the District of Arizona, Defendant was charged under the name Michael Kowal with making a false statement in connection with a passport application. An arrest warrant issued, but Defendant was neither arrested nor arraigned on that charge.[5]

## C. The "William Clorindo Bloom" Name

### 1. *Stealing the identity*

In late 1989, Defendant left Arizona for California in an attempt to avoid prosecution for the state charges in Arizona. After leaving Arizona, Defendant conducted some research and obtained a birth certificate for William Clorindo Bloom ("Bloom Birth Certificate"). William Clorindo Bloom is a person who was born in September of 1944.[6] William Clorindo Bloom died of pneumonia when he was four months old. Defendant used the Bloom Birth Certificate and obtained a California identification card in the Bloom name ("Bloom ID"). On January 12, 1990, Defendant used the Bloom Birth Certificate and the Bloom ID to apply for a SSN in the Bloom name. Defendant received a SSN ending in the four digits 1447. On October 31, 1995, Defendant obtained a California

---

[5] In about November of 2001, the authorities dismissed the federal charge.

[6] Defendant and William Clorindo Bloom were both born in September of 1944, but on different dates.

driver's license in the name of William C. Bloom, which bore the same number as the previously issued Bloom ID.

### 2. California charge

On March 13, 1998, Defendant was charged in San Diego County, California, under the Bloom name with felony theft from his employer. Defendant was never arrested on that charge.

### D. The "Michael William Tipton" Name

In about 2000 or 2001, Defendant left California and returned to Arizona. He resumed living under the name of Larry William Tipton. While in Arizona, he began dating Marilyn Egli, and the two agreed to be married.

### 1. The marriage license

On March 18, 2003, Defendant completed a form titled, "Application to Marry in Iowa." He represented that his "legal name before marriage" was Larry William Tipton and that his "legal name after marriage" would be Michael William Tipton.[7] He listed his parents as William Tipton and Dee LaMar, and he used the SSN ending in the four digits 0053.

---

[7] Iowa law permits men and women to change their names through marriage. Iowa's name change law provides:

> 1. A party may indicate on the application for a marriage license the adoption of a name change. The names used on the marriage license shall become the legal names of the parties to the marriage. The marriage license shall contain a statement that when a name change is requested and affixed to the marriage license, the new name is the legal name of the requesting party.

> 2. An individual shall have only one legal name at any one time.

Iowa Code § 595.5 (2001).

On March 21, 2003, the State of Iowa issued a License to Marry in Iowa ("Marriage License").

On March 23, 2003, Defendant married Marilyn Egli in Cedar Rapids, Iowa. She changed her name to Marilyn Egli-Tipton. Defendant claims to have changed his name to Michael William Tipton.[8]

In June of 2004, Defendant moved to Iowa, where Marilyn Egli-Tipton had already begun residing.

### 2. The SSN ending in the four digits 0053

On June 29, 2004, in the Northern District of Iowa, Defendant applied for a replacement Social Security card for the SSN ending in the four digits 0053, which had been assigned to the name Larry William Tipton in 1989. Defendant listed his name as Michael William Tipton, and he listed his "name at birth" as Larry William Tipton. He stated that he was born in Wickenburg, Arizona, in December of 1944 to Dorothy C. LaMar and William D. Tipton. Defendant requested that the name on the Social Security card for the SSN ending in the four digits 0053 be changed to Michael William Tipton. The Social Security Commissioner issued a Social Security card for the SSN ending in the four digits 0053 to the name Michael William Tipton.

### 3. The Iowa driver's license

On June 29, 2004, Defendant used the SSN ending in the four digits 0053 to obtain an Iowa driver's license in the name of Michael William Tipton ("Iowa License"). On the Affidavit and Agreement for Issuance of Duplicate License/ID, Defendant stated that he had previously been known as Larry William Tipton, but that he changed his name to Michael William Tipton through the Marriage License.

---

[8] The court shall make findings regarding Defendant's purported name change in Part V(D) of this order.

8

#### 4. *The real estate license*

On September 10, 2004, Defendant completed an Iowa real estate license application ("Real Estate License Application"). Among other things, the Real Estate License Application sought the applicant's name, SSN and "[b]irth month." Defendant knowingly represented to the Iowa Real Estate Commission that his name was Michael Tipton, his SSN was the SSN ending in the four digits 0053 and his "birth month" was December.

#### 5. *The certificate of title to a vehicle*

Prior to January 13, 2005, Defendant obtained a certificate of title for a 1991 Chrysler New Yorker from the State of Arizona in the name of Larry William Tipton. On January 13, 2005, Defendant went to the office of the Linn County, Iowa, Treasurer and sought to transfer title of the 1991 Chrysler New Yorker from the name of Larry William Tipton to the name Michael William Tipton. Someone[9] informed Defendant that the simplest way to obtain title to the vehicle in the name of Michael William Tipton was to engage in a sale of the vehicle from Larry William Tipton to Michael William Tipton. Defendant provided an employee of the Linn County Treasurer's office with the Arizona certificate of title in the name of Larry William Tipton, and he completed an Application for Certificate of Title and/or Registration ("Application for Vehicle Title"). As proof of his identity, Defendant provided the Linn County Treasurer's office employee with the following three documents: (1) the Marriage License, (2) the Iowa License and (3) the Social Security card for the SSN ending in the four digits 0053 in the name of Michael William Tipton.

---

[9] The parties' Stipulation is unclear. It is unclear whether the "someone" was an employee of the Linn County Treasurer's office or some other advice-giver.

Case 1:06-cr-00133-LRR   Document 41   Filed 05/15/07   Page 9 of 28

### E. The Annulment

On May 16, 2005, Marilyn Egli-Tipton filed an action in the Iowa District Court in and for Linn County seeking an annulment of her marriage to Defendant. On June 8, 2005, the state court issued a Decree of Annulment that annulled the marriage. As part of the Decree of Annulment, the state court changed Marilyn Egli-Tipton's name back to Marilyn Egli. The state court did not discuss Defendant's name, other than listing him as "Michael Tipton, a/k/a Larry William Tipton, a/k/a Michael Edward Kowal" in the caption of the Decree of Annulment.

### F. Return to the "Michael Edward Kowal" Name

In about mid-2005, Defendant moved from Iowa to near Chicago, Illinois, and he began using the name Michael Edward Kowal again. He obtained an Illinois driver's license in his given name.

## IV. MOTION TO DISMISS

### A. The Arguments

In the Motion to Dismiss, Defendant argues that Counts 5 and 7 fail to state offenses because the term "person" in § 1028A(a)(1) "is construed only to include the living, not the dead." Defendant argues that, because Larry William Tipton died in 1949 and was not a living person in September of 2004 and January of 2005, both counts fail. He argues that Larry William Tipton is not "another person," as that term is used in the phrase "means of identification of another person" in § 1028A.

In the Motion to Dismiss, Defendant also argues that, in March of 2003, he legally changed his name to Michael William Tipton through the Marriage License. Therefore, Defendant argues that Count 5 fails to state an offense insofar as it charges improper use of the name "Tipton" because that was his legal name. He further claims that Count 5 fails to state an offense, because "December" is too vague to constitute "means of identification of another person" and it is not a "date of birth."

10

In reply, the government argues that Defendant cannot challenge the sufficiency of the evidence underlying Count 5 of the Indictment in the Motion to Dismiss. It argues that Defendant's challenge to Count 5 of the Indictment cannot be lodged in the Motion to Dismiss, because the fact finder must determine whether Defendant's use of the name "Tipton" and birth month of "December" violate the statute.

The government further argues that § 1028A(a)(1) applies to identity theft from both living and deceased persons. It cites the legislative history of the Identity Theft Penalty Enhancement Act ("Act") and the statutory construction of § 1028(d)(7), the statutory section that defines "means of identification."

## B. Whether the Term "Person" is Limited to Living Persons

To convict Defendant for violating the aggravated identity theft statute, that is, § 1028A(a)(1), as charged in Counts 5 and 7 of the Indictment, the government must prove "that [D]efendant (1) knowingly used (2) the 'means of identification' of another person (3) without lawful authority (4) during and in relation to a violation of [a felony enumerated in § 1028A(c)]." *United States v. Hines*, 472 F.3d 1038, 1039 (8th Cir. 2007) (citing *United States v. Montejo*, 353 F. Supp. 2d 643, 655 (E.D. Va. 2005), *aff'd*, 442 F.3d 213 (4th Cir. 2006), *cert. denied*, 127 S. Ct. 366 (2006)). The court must determine whether "person," as that term is used in § 1028A(a)(1), can be a deceased person. This is a question of first impression in the Eighth Circuit.[10]

### 1. Plain language of the statute

"It is well established that [the Eighth Circuit Court of Appeals] commence[s] any statutory interpretation with the statute's plain language." *United States v. Cacioppo*, 460 F.3d 1012, 1016 (8th Cir. 2006); *see also In re M & S Grading, Inc.*, 457 F.3d 898, 901

---

[10] Only one other court has addressed this exact issue. *See generally United States v. Jimenez*, No. CRIM. 05-10058-RGS, 2005 WL 2453814 (D. Mass. Oct. 4, 2005) (denying the defendant's motion to dismiss and determining that § 1028A(a)(1) punishes the appropriation of the identity of deceased persons).

11

(8th Cir. 2006) ("[A] federal court's analysis of a statute must begin with the plain language."). If the statutory language is plain, the court concludes its analysis and gives the term its ordinary meaning. *See Cacioppo*, 460 F.3d at 1016 ("Where the language is plain, we need inquire no further."); *United States v. McCall*, 439 F.3d 967, 971 (8th Cir. 2006) ("When a statute's plain language is this clear, it is controlling, without regard to contrary hints in the legislative history and without the need to refer to the canons of *noscitur a sociis* and *ejusdem generis*."); *see also United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) ("Where . . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms." (Quotation omitted.)).

It is also "well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute . . . and the objects and policy of the law . . . ." *Bob Jones Univ. v. U.S. Goldsboro Christian Schs., Inc.*, 461 U.S. 574, 586 (1983) (emphasis and quotation omitted). Therefore, the language in § 1028A(a)(1) must be "analyzed and construed within the framework" of the entire Act and "against the background of the Congressional purposes." *Bob Jones Univ.*, 461 U.S. at 586.

Counts 5 and 7 of the Indictment charge that Defendant violated the federal aggravated identity theft statute. The Act was enacted by Congress on July 15, 2004. *See* Pub. L. 108-275, § 2(a), 118 Stat. 831. It provides, in part:

> **(a) Offenses.**—
>
> **(1) In general.**—Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1) (2006) (emphasis in original). Subsection (c) of § 1028A provides, in part:

Case 1:06-cr-00133-LRR   Document 41   Filed 05/15/07   Page 12 of 28

> **(c) Definition.**—For purposes of this section, the term "felony violation enumerated in subsection (c)" means any offense that is a felony violation of—
>
> . . .
>
> **(11)** section 208 . . . of the Social Security Act (42 U.S.C. [§] 408 . . .) (relating to false statements relating to programs under the [Social Security]Act).

*Id.* § 1028A(c)(11) (emphasis in original).

The court shall first determine the ordinary meaning of the term "person." To do so, the court looks to the dictionary definition. *United States v. Idriss*, 436 F.3d 946, 949 (8th Cir. 2006) (looking to Webster's Third New International Dictionary for the plain meaning of a statutory term). The term "person" is defined as follows: "A human being. —Also termed *natural person*." Black's Law Dictionary (8th ed. 2004) (emphasis in original); *see* Merriam-Webster's Online Dictionary, *available at* http://www.m-w.com (last visited May 2, 2007) (defining "person" as "human, individual"). However, another dictionary defines the term "person" as "[a] living human." American Heritage Dictionary of the English Language (4th ed. 2000). The Supreme Court has stated that "[a]lthough in ordinary usage both 'individual' and 'person' often refer to an individual human being, . . . 'person' often has a broader meaning in the law[.]" *Clinton v. City of N.Y.*, 524 U.S. 417, 428 n.13 (1998) (quoting the Dictionary Act, 1 U.S.C. § 1, which defines the term "person" as "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals").

Because the dictionary definitions are varied and because the court should not examine the term "person" in a vacuum, the court turns to examine the statutory structure. *Bob Jones Univ.*, 461 U.S. at 586. Section 1028A punishes conduct that is directly related to serious crimes of identity theft (subsection (a)(1)) and acts of terrorism (subsection (a)(2)). 18 U.S.C. § 1028A. The statute uses the same language in both subsections: It punishes "whoever . . . knowingly transfers, possesses, or uses, without lawful authority,

13

a means of identification of another person . . . ." *Id.* § 1028A(a)(1) and (a)(2). Congress surely did not intend to exempt from punishment the terrorist who assumed the identity of a person who was no longer living. *Accord United States v. Jimenez*, No. CRIM. 05-10058-RGS, 2005 WL 2453814, at *2 (D. Mass. Oct. 4, 2005) ("It is doubtful that Congress would have intended to exempt from the aggravated punishment of the statute a terrorist who, fortuitously or otherwise, assumed the identity of a deceased person. Nor is it likely that Congress would have intended subsection (a)(1) to reach only living persons while including persons living and dead in subsection (a)(2), at least not without making its purpose in that regard clear."). Had Congress intended to exclude deceased persons from the definition of "person" in the aggravated identity theft statute, it could have simply inserted the word "living" into the text of § 1028A(a)(1). In other words, Congress could have defined aggravated identity theft as the use, possession or transfer of means of identification of *another living person* during or in relation to an enumerated felony. The court finds Congress's omission of the word "living" from the text of § 1028A(a)(1) to be purposeful.

Upon an examination of the plain language and statutory structure of § 1028A, the court finds that the term "person" in § 1028A(a)(1) is unambiguous. The plain, ordinary meaning of the term "person" includes any human beings, living or dead. *Cf. United States v. Bush*, 404 F.3d 263, 265-69 & 276 (4th Cir. 2005) (affirming, without discussion, the defendant's conviction for using a fake SSN to obtain a car loan, in violation of 42 U.S.C. § 408(a)(7)(B), where the SSN was assigned to a decedent and the statute prohibits using the SSN assigned "to another person").

In the event that the court has erred and the term "another person" is found to be ambiguous or subject to more than one meaning, the court shall examine the legislative history of the statute. *See In re Operation of Mo. River Sys. Litig.*, 418 F.3d 915, 918 &

Case 1:06-cr-00133-LRR   Document 41   Filed 05/15/07   Page 14 of 28

n.4 (8th Cir. 2005) (declining to "reach the legislative history" after finding a statute unambiguous, but including relevant legislative history passages in the opinion).

### 2. *Legislative history*

In the absence of clear or plain statutory language, the court turns to the second step of the statutory interpretation method adopted by the Eighth Circuit Court of Appeals and "attempt[s] to infer the statute's meaning from its legislative history." *Cacioppo*, 460 F.3d at 1018 (citing *Liparota v. United States*, 471 U.S. 419, 423 (1985)). The Eighth Circuit Court of Appeals has explained the importance of legislative history:

> It is neither necessary or expedient to enumerate and give consideration to the numerous canons of construction to be applied in interpreting or construing a statute. The legislative will is the all-important or controlling factor, and has been said to be the vital part, the heart, soul, and essence of the law.

*Kansas City, Mo. v. Fed. Pac. Elec. Co.*, 310 F.2d 271, 274-75 (8th Cir. 1962) (citing 50 Am. Jur., *Statutes*, § 223, p. 200). "When a statute is of doubtful meaning, consistent statements made by sponsors of legislation and committee chairmen are useful aids in interpretation." *Id.* at 280 (citing *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384 (1951)); *see also id.* 278 & 280 (relying on the statements of Representative Celler, the "Chairman of the Committee on the Judiciary which studied the proposed antitrust legislation, and floor manager of [the bill,]" to determine congressional intent and stating that Representative Celler's "remarks are clarifying additions that reflect the careful diligence of a congressman who virtually lived with the problem during the course of several congressional sessions").

Section 1028A originated from the House Judiciary Committee's Subcommittee on Crime, Terrorism and Homeland Security. H.R. Rep. No. 108-528, at 7 (2004) ("House Report"), *reprinted in* 2004 U.S.C.C.A.N. 779, 783. According to the House Report, the purpose of the statute is to "provide[] enhanced penalties for persons who steal identities to commit terrorist acts, immigration violations, firearms offense, and other serious

15

crimes." H.R. Rep. No. 108-528, at 3, 2004 U.S.C.C.A.N. at 780. Congress determined there was a need for a federal aggravated identity theft statute, partially, because "[t]he insider threat from identity theft and identity fraud is a threat to personal security as well as national security." H.R. Rep. No. 108-258, at 5, 2004 U.S.C.C.A.N. at 781.

On March 23, 2004, the Subcommittee on Crime, Terrorism and Homeland Security held a hearing on the Act. *Identity Theft Penalty Enhancement Act, and the Identity Theft Investigation and Prosecution Act of 2003, Hearing on H.R. 1731 and H.R. 3693 before Subcomm. on Crime, Terrorism, and Homeland Security of the House of Representatives Comm. on Judiciary*, 108th Cong., 2d Sess. at I (Mar. 23, 2004), *available at* http://judiciary.house.gov/media/pdfs/printers/108th/92671.pdf (last visited May 2, 2007) [hereinafter "*Hearing*"]. Representative Adam B. Schiff co-sponsored the Act. *Id.* at II and 4-5. Timothy Coleman, Counsel to the Assistant Attorney General, Criminal Division, United States Department of Justice, testified before the Subcommittee as a witness. *Id.* at III and 7-11. Representative Schiff and Mr. Coleman engaged in the following discussion regarding the term "another person," as it appears in § 1028A(a)(1):

> Mr. SCHIFF. Couple of questions about some of the language in the bill, trying to get a sense of the scope of the language. In section A where the offenses are defined, it refers to a means of identification of another person. I take it by the choice of that language that these enhancements apply when the fraudulent identification is that of *another existing person, either live or deceased, but an actual individual*, so in the case of a garden-variety immigration case where somebody fabricates an identity card out of whole cloth, not referring to any other person but merely invents a persona, that that [sic] would not be included within the sweep of this.
>
> Mr. COLEMAN. I believe that is correct. That is my understanding of how the legislation was drafted in my construction of the plain language. Presumably a court could take a different view in a particular case, but I believe it is fair to say that, on the face of it, the plain language would exclude

cases of a fictitious identity as opposed to the theft of an existing identity.

Mr. SCHIFF. I think that is significant. I think that is correct looking at section 1028, which is also distinguished in its use of language between the possession of a false identification document and a means of identification of another person. But the reason I think it is significant is that otherwise you would potentially have an enhancement for everyone who illegally enters the country, that they would be committing one crime entering the country and they would be committing a second crime having a false document, but there wouldn't be another victim in the sense that no one's identity had been stolen to facilitate that crime. . . .

*Hearing*, at 32-33 (emphasis added). The legislative history of the aggravated identity theft statute confirms that "person" refers to both living and deceased human beings.

### 3.  *Conclusion*

The court holds that the term "person" in § 1028A includes all human beings, regardless of whether they are living at the time their identity is stolen and used. Therefore, Counts 5 and 7 of the Indictment state an offense insofar as they allege that the "person" is a decedent. Defendant's Motion to Dismiss shall be denied in this regard.

### C.  *Whether Count 5 of the Indictment States an Offense*

Defendant also argues in his Motion to Dismiss that Count 5 of the Indictment should be dismissed because the words "Tipton" and "December" are not "means of identification," as that phrase is used in § 1028A(a)(1). Federal Rule of Criminal Procedure 12(b) provides that a defendant may argue that the indictment fails to state an offense. Fed. R. Crim. P. 12(b)(3)(B). On a pretrial motion to dismiss an indictment pursuant to Rule 12(b), the court must accept all factual allegations in the Indictment as true. *United States v. Sampson*, 371 U.S. 75, 78-79 (1962). There is no "federal criminal procedure . . . 'for a pre-trial determination of sufficiency of the evidence.'" *United*

17

*States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (quoting *United States v. Critzer*, 951 F.2d 306, 307-08 (11th Cir. 1992)).

> "In civil cases, of course, the summary judgment procedures contemplated by Federal Rule of Civil Procedure 56 may be utilized to test, pretrial, the sufficiency of the evidence to establish trial issues of fact; but there is no corollary in criminal cases. The government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29 . . . . [W]e simply cannot approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be."

*Ferro*, 252 F.3d at 968 (quoting *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000) (omission and modification in *DeLaurentis*)).

The court finds that the use of the words "Tipton" and "December" relates to the sufficiency of the evidence, and, therefore, this contention cannot be addressed in a pretrial motion to dismiss. Insofar as Defendant's Motion to Dismiss alleges that Count 5 of the Indictment fails to state an offense due to the inclusion of the terms "Tipton" and "December," the Motion to Dismiss shall be denied.

## V. BENCH TRIAL

### A. The Arguments

#### 1. Government's arguments

The government argues that Defendant's use of the names "Tipton," "Larry William Tipton" and "Michael William Tipton"; the birth month of "December"; and the date of birth of "1944-12-XX" are all "means of identification," as that phrase is used in § 1028A(a)(1). The government argues that Defendant stole identities in order to avoid criminal charges in Arizona and California. It argues that the evidence that Defendant stole the identity of William Clorindo Bloom constitutes evidence under Federal Rule of Evidence 404(b) or evidence that Defendant had knowledge that he was stealing a

18

decedent's identity, and that it is evidence that he had a plan to live under stolen identities in order to avoid criminal responsibility.

As to Count 5 of the Indictment, the government argues that Defendant did not legally change his name through marriage and, even if he did, that his use of the birth month "December" still constituted aggravated identity theft. It argues that "Tipton" is a "name" and "December" is a "number" for the purposes of § 1028(d)(7). Alternatively, the government argues that, even if "December" is not a "means of identification," Defendant is still guilty of aggravated identity theft as to the Real Estate License Application, because he used the name "Tipton" in conjunction with other information, namely, Larry William Tipton's month of birth.

As to Count 7 of the Indictment, the government argues that it is "quite beyond dispute that '1944-XX-XX' . . . is both a 'date of birth' and a 'number' for purposes of the definition of 'means of identification' set forth in 18 U.S.C. § 1028(d)(7)." It also argues that it is beyond dispute that the date of birth used by Defendant on the Application for Vehicle Title is Larry William Tipton's date of birth and not Defendant's date of birth.

### 2. *Defendant's arguments*

Defendant argues that, in March of 2003, when he married Marilyn Elgi, he followed the requirements of Iowa Code section 595.5 and legally changed his name to Michael William Tipton. Therefore, he argues that Count 5 of the Indictment, which charges that he improperly used the last name "Tipton," fails to state an offense. He further argues that his representation that "December" is the month he was born is neither a "means of identification of another person" nor a "date of birth," as required by § 1028A(a)(1). Accordingly, he argues that the portion of Count 5 involving his "December" representation also fails to state an offense.

19

Finally, as to Count 7 of the Indictment, Defendant argues that his use of the birth date "1944-12-XX" on the Application for Vehicle Title is not a violation of § 1028A, because "[t]here are numerous persons with that birthdate."

## B. Elements of the Crime

The parties agree that the first and fourth elements set forth by the Eighth Circuit Court of Appeals in *Hines* have been met. *See Hines*, 472 F.3d at 1039, *supra* Part IV(B). The questions remaining are (1) whether Defendant used the "means of identification of another person" and (2) whether he lacked the "lawful authority" to do so. The court, in turn, shall consider these questions.

## C. "Means of Identification"

First, the court must determine whether "means of identification," as that phrase is used in § 1028A, includes the surname "Tipton," the birth month "December" and the date of birth "1944-12-XX."[11]

Again, the court examines the plain language of the statute. Congress defined the phrase "means of identification":

> **(d)** In this section and section 1028A—
>
> . . .
>
> **(7)** the term "means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—

---

[11] The question of whether a surname or a birth month constitute a "means of identification" also appear to be matters of first impression. There are only a limited number of cases dealing with charges under § 1028A(a)(1), and, out of those cases, the court can find none that address a situation where the defendant has used a partial personal identifier such as a surname or birth month.

20

       **(A)** name, [SSN], date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;

       **(B)** unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;

       **(C)** unique electronic identification number, address, or routing code; or

       **(D)** telecommunication identifying information or access device (as defined in section 1029(e)) . . . .

18 U.S.C. § 1028(d)(7) (emphasis in original).

     *1.*    ***Count 5:  "Tipton" and "December"***

     Count 5 charges that "[D]efendant used the last name ('Tipton') and the month of birth ('December') of 'Larry William Tipton,' an actual person."  Count 5 also explicitly incorporates Count 4.  On the Real Estate License Application, Defendant represented to the Iowa Real Estate Commission, among other things, that his name was Michael Tipton, his SSN was the SSN ending in the four digits 0053 and his "birth month" was December.

     The court is guided by cases that examine the phrase "means of identification" in the sentencing context.  The phrase "means of identification" is defined in the United States Sentencing Guidelines ("USSG") as follows:

> *"Means of identification" has the meaning given that term in 18 U.S.C. § 1028(d)(7), except that such means of identification shall be of an actual (i.e., not fictitious) individual, other than the defendant or a person for whose conduct the defendant is accountable under §1B1.3 (Relevant Conduct).*

USSG §2B1.1, comment. (n.9(A)) (emphasis in original).  In *United States v. Oates*, 427 F.3d 1086 (8th Cir. 2005), the Eighth Circuit Court of Appeals examined whether a

Case 1:06-cr-00133-LRR   Document 41   Filed 05/15/07   Page 21 of 28

sentencing enhancement was appropriate under USSG §2B1.1(b)(9)(C)(i)[12] for "'the unauthorized . . . use of any means of identification unlawfully to produce or obtain any other means of identification.'" *Id.* at 1088-89 (quoting USSG §2B1.1(b)(9)(C)(i) and finding that the definition of "means of identification" in § 1028(d)(7) applied). In *Oates*, the defendant opened a credit card account in the name of a fictitious business but with a SSN that was assigned to an actual person. *Id.* at 1089-90. The fraudulent activity appeared on the victim's credit report, and the victim was forced to take steps to protect his identity from being linked to the fictitious business's credit card account number. *Id.* at 1089. The defendant in *Oates* used the victim's social security number (a "means of identification") to unlawfully obtain a second "means of identification," that is, the credit card account number. *Id.* The Eighth Circuit Court of Appeals affirmed the sentence and stated: "When an actual individual's social security number is paired with a fictitious name on a subsequently obtained means of identification, it does not necessarily 'sever the ties linking the victims and the Social Security numbers.'" *Id.* at 1090 (quoting *United States v. Melendrez*, 389 F.3d 829, 836 (9th Cir. 2004)). Similarly, even though one step further removed, the court finds that Defendant's use of the Tipton Birth Certificate to obtain the fraudulent SSN, which was, in turn "paired with [the] fictitious name" Michael Tipton, does not "sever the ties linking" Larry William Tipton with his identifying information. *Id.*; *see also United States v. Scott*, 448 F.3d 1040 (8th Cir. 2006) (affirming a sentencing increase under USSG §2B1.1(b)(10)(C)(i) for the unauthorized use of a means of identification to obtain another means of identification where the defendant obtained identification cards and Social Security cards to create business names and obtain fraudulent bank account numbers that he printed on counterfeit checks); *United States v.*

---

[12] On November 1, 2004, USSG §2B1.1(b)(9)(C)(i) was redesignated as USSG §2B1.1(b)(10)(C)(i), due to the insertion of a new subdivision (7). USSG App. C, Amendment 665.

Case 1:06-cr-00133-LRR   Document 41   Filed 05/15/07   Page 22 of 28

*Geeslin*, No. 05-60616, 2007 WL 756457, *1 (5th Cir. Mar. 9, 2007) (unpublished) (determining that a telephone number is a "means of identification," as that term is defined in § 1028(d)(7)); *United States v. Samet*, 200 Fed. Appx. 15, 23 (2d Cir. 2006) (unpublished Summary Order) (pointing to a USSG application note that defines a bank loan account number and credit card number as a "means of identification" and determining that a lease that has its own account number is a "means of identification"); *United States v. Crounsset*, 403 F. Supp. 2d 475, 482-83 (E.D. Va. 2005) (finding the defendant's use of an alien registration number to be a "means of identification of an actual individual").

The court finds that the surname "Tipton," when used "in conjunction with" the SSN ending in the four digits 0053 and the birth month of December is a means of identification of a "specific individual," namely, Larry William Tipton. *See* 18 U.S.C. § 1028(d)(7)(A). The phrase "in conjunction with" in § 1028(d)(7) is a broad phrase. *See United States v. Newsome*, 439 F.3d 181, 185 (3d Cir. 2006) (emphasizing the phrase "in conjunction with any other information" in § 1028(d)(7) and determining, in the sentencing context, that a forged driver's license and employer identification card that provided the "identity theft victim's correct information," combined with a photograph of another individual, were "means of identification"). Defendant used the Tipton Birth Certificate (which lists Larry William Tipton's birth month as December) and the Arizona License to obtain the SSN ending in the four digits 0053. On October 2, 1989, the SSN ending in the four digits 0053 was assigned to "Larry William Tipton." On June 29, 2004, Defendant applied for a replacement Social Security card for the SSN ending in the four digits 0053 so that the identifying number would be assigned to the made-up person he had tried to become, Michael William Tipton, rather than to the actual deceased person, Larry William Tipton. After examining the Real Estate License Application as a whole, the court finds that the surname "Tipton" qualifies as "any name" as that phrase is used in § 1028(d)(7).

23

"Tipton" is the "means of identification" of Larry William Tipton because Defendant used the surname "Tipton" in conjunction with "other information."

The court also finds that the birth month of "December," when used "in conjunction with" the SSN ending in the four digits 0053 and the name Michael Tipton is a means of identification of a "specific individual," namely, Larry William Tipton. *See* 18 U.S.C. § 1028(d)(7)(A). The Real Estate License Application asked for the applicant's name, SSN and "[b]irth month." Despite the fact that Defendant was born on a day in September of 1944, he represented that he was born in December.

The court finds that the evidence proves, beyond a reasonable doubt, that the second element of the aggravated identity theft offense is met as to Count 5 of the Indictment by Defendant's use of the name "Tipton" and by his use of the birth month of "December." *See Hines*, 472 F.3d at 1039 (listing four elements the government must prove to prove a violation of § 1028A(a)(1), the second of which is that the offender used "the 'means of identification' of another person").

## 2. Count 7: "1944-12-XX"[13]

The court finds that the date of birth of "1944-12-XX" qualifies as a "means of identification," as that phrase is used in § 1028A(a)(1). It is a "date of birth." 18 U.S.C. § 1028(d)(7)(A). The date of birth of 1944-12-XX that Defendant used on the Application for Vehicle Title is Larry William Tipton's date of birth. The court finds that the evidence proves, beyond a reasonable doubt, that the second element of the aggravated identity theft crime is met as to Count 7 of the Indictment. *See Hines*, 472 F.3d at 1039 (listing four elements the government must prove to prove a violation of § 1028A(a)(1), the second of which is that the offender used "the 'means of identification' of another person").

---

[13] The court notes that the analysis in Part V(C)(1) also applies to Count 7 and to Defendant's use of the name Larry William Tipton on the Application for Vehicle Title.

24

### D. *"Lawful Authority" to Use the Means of Identification*

The final element of the crime of aggravated identity theft is "without lawful authority," that is, that Defendant knowingly used the means of identification of another person without lawful authority during and in relation to a violation of an enumerated felony. *Id.* (listing the four elements of § 1028A(a)(1)). The evidence shows that Defendant had no authority, lawful or otherwise, to use Larry William Tipton's identifying information. In 1989, Defendant stole the identity of a person who died in Kansas in 1949 at the age of five.

Defendant admits that he did not obtain consent of "any type" from Larry William Tipton or from the Larry William Tipton estate. He contends, instead, that he had obtained "lawful authority from the State of Iowa to use the name 'Michael William Tipton[.]'" Taking the evidence as a whole, the court rejects Defendant's argument. The evidence shows that, originally, Defendant stole Larry William Tipton's identity by using the Tipton Birth Certificate to obtain the Arizona License. He then used the Tipton Birth Certificate and fraudulently obtained Arizona License to obtain the SSN ending in the four digits 0053. He then fraudulently represented himself to be "Larry William Tipton" on the Application to Marry in Iowa. He now claims that three wrongs make a right.

The court finds that Defendant did not legally change his name to Michael William Tipton when he married Marilyn Egli. His name was not the name he listed—Larry William Tipton—even if Defendant had convinced himself that he was, indeed, Larry William Tipton. Because Defendant was not Larry William Tipton when he attempted to change his name to Michael William Tipton, he did not change his name pursuant to Iowa Code section 595.5. He remained Michael Edward Kowal. Because Defendant never lawfully changed his name from Michael Edward Kowal, he had no authority to use the name "Michael Tipton" on the Real Estate License Application or the names "Michael William Tipton" and "Larry William Tipton" on the Application for Vehicle Title.

Case 1:06-cr-00133-LRR   Document 41   Filed 05/15/07   Page 25 of 28

The court finds that the evidence proves, beyond a reasonable doubt, that the third element of the aggravated identity theft offense is met as to Counts 5 and 7 of the Indictment. *See Hines* 472 F.3d at 1039 (listing four elements the government must prove to prove a violation of § 1028A(a)(1), the third of which is that the offender acted "without lawful authority").

### E. Verdicts

The court finds Defendant guilty, beyond a reasonable doubt, of the offenses alleged in Counts 5 and 7 of the Indictment.

### VI. MOTION FOR JUDGMENT OF ACQUITTAL

In the Acquittal Motion, Defendant, relying on Federal Rule of Criminal Procedure 29(a), moves for judgment of acquittal on Counts 5 and 7 of the Indictment, both at the close of the government's case and at the close of all of the evidence.

Rule 29(a) provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. Fed. R. Crim. P. 29(c).

Here, the guilty verdicts on Counts 5 and 7 of the Indictment were determined by the court in a stipulated bench trial. Therefore, this is not a typical motion for acquittal because there is no jury verdict to assess. In this order, the court determined that the government proved Defendant's guilt beyond a reasonable doubt as to Counts 5 and 7 of the Indictment. Therefore, for all of the reasons set forth herein, the court shall deny the Acquittal Motion. *See United States v. Mitchell*, 388 F.3d 1139, 1142-44 (8th Cir. 2004) (affirming the district court's denial of a motion for acquittal after a bench trial and stating: "'When the determination of a question of fact is also determinative of the ultimate question of guilt, it is the duty of the appellate court to determine whether there is substantial evidence, taking the view most favorable to the government, to support the fact

determination by the trial court.'" (quoting *United States v. Swayne*, 700 F.2d 467, 471-72 (8th Cir. 1983))).

## VII. DISPOSITION

Accordingly, **IT IS ORDERED** as follows:

1.    The court **DENIES** Defendant's Motion to Dismiss (docket no. 13);

2.    The court finds the evidence has proven, beyond a reasonable doubt, that Defendant is **GUILTY** of aggravated identity theft, as charged in Counts 5 and 7 of the Indictment;

3.    The court **DENIES** the Acquittal Motion (docket no. 37);

4.    The United States Probation Office is directed to conduct a presentence investigation and to prepare a report;

5.    The attorneys are directed to timely comply with the deadlines for preparation of the presentence report;

6.    The period between the filing of Defendant's motions and this order is excluded from calculation under the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F) (excluding delay resulting from the filing of any pretrial motion through the prompt disposition of the motion); 18 U.S.C. § 3161(h)(1)(J) (excluding "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court"); and

7.    Defendant is directed to remain detained pursuant to 18 U.S.C. § 3143(a)(1). Defendant has now been convicted of several offenses and is "awaiting imposition or execution of a sentence." *Id.* The court is unable to find by

Case 1:06-cr-00133-LRR   Document 41   Filed 05/15/07   Page 27 of 28

"clear and convincing evidence that [Defendant] is not likely to flee or pose a danger to the safety of any other person or the community." *Id.*

**IT IS SO ORDERED.**

**DATED** this 15th day of May, 2007.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA